U.S. DISTRICT COURT
EASTERN DISTRICT-WI
GREEN BAY DIV.

'09 OCT 26 A8 31

FILED
JON W. SAMPTPL 651
CLERK

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

the property known as:
A 1992 Buick Park Avenue four-door automobile,
described as white in color, VIN 1G4CU5312N1626634,
registered to Marilyn R. Creapeau, which is currently
located at the Shawano County Impound Facility, in
the City of Shawano, in the State and Eastern District
of Wisconsin. The vehicle was towed to the impound
facility following a crash involving the death of J.J.,
d.o.b. ▓▓-91.

**Application & Affidavit
For Search Warrant**

I, **ROBERTO MOLINA**, being first duly sworn depose and say: I am a Special Agent for the Federal Bureau of Investigation and have reason to believe that on the property known as a 1992 Buick Park Avenue four-door automobile, described as white in color, VIN 1G4CU5312N1626634, registered to Marilyn R. Creapeau, which is currently located at the Shawano County Impound Facility, in the City of Shawano, in the State and Eastern District of Wisconsin. The vehicle was towed to the impound facility following a crash involving the death of J.J., d.o.b. ▓▓-91.

in the Eastern District of Wisconsin there is now concealed certain property, which is the evidence of a crime, contraband, and fruits of crime, concerning violations of Title 18, United States Code, §1112 and 1153.

The facts to support a finding of Probable Cause are as follows:

See the attached Affidavit of Special Agent Roberto Molina.

Continued on the attached sheet and made a part hereof.  √ Yes    No

_____
Signature of Affiant
ROBERTO MOLINA

Sworn to before me, and subscribed in my presence

October 26 2009
Date and time issued

at Green Bay, Wisconsin
City and State

Hon. James R. Sickel, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Roberto Molina, a Special Agent with the Federal Bureau of Investigation, being duly sworn, depose and state as follows:

## I. EXPERIENCE OF AFFIANT

1. I am employed as a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 18 years. I am currently assigned to the Green Bay Division, located in the Eastern District of Wisconsin. Since joining the FBI, I have investigated violent crimes, controlled substances violations, firearms crimes, white collar crimes involving fraud, computer crimes, and crimes involving the sexual exploitation of children. I have gained expertise in conducting such investigations through training, seminars, classes, discussions with other knowledgeable agents, and everyday work related to conducting these types of investigations.

2. During the course of my employment, I have participated in the execution of dozens of search warrants in the capacity of affiant and/or participant. These warrants involved the search of locations including residences, businesses, vehicles, "stash houses" (houses used as drug/money storage locations), and storage facilities. Evidence searched for, and recovered, in these locations have included items showing evidence of a multitude of federal offenses.

3. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

4. As a Special Agent with the FBI, I am not trained in accident reconstruction and I intend to seek out and obtain the aid of Trooper Thomas Erdmann with the Wisconsin State Patrol and others associated with the Wisconsin State Patrol.

1

## II. EXPERIENCE OF THOMAS ERDMANN

5. During the course of an investigation involving a fatality on October 12, 2008, I have been provided with the following information regarding the background and experience of Trooper Erdmann.

6. Thomas Erdmann is employed as a State Trooper with the Wisconsin State Patrol (WSP) and has been so employed for approximately 21 years. He is currently assigned to the Office of the Academy, Technical Reconstruction Unit, and investigates traffic violations of state and federal law that occur throughout the State of Wisconsin, including those that occur in Indian Country, which includes the Menominee Indian Reservation, which is located in the State and Eastern District of Wisconsin.

7. Since joining the WSP, Trooper Erdmann has conducted in excess of 300 traffic reconstructions. He has been trained in the specialized field of traffic crash reconstruction and has gained expertise in conducting such investigations through training, seminars, classes, discussions with other knowledgeable agents, and everyday work related to conducting these types of investigations. Trooper Erdmann has been accredited by ACTAR (Accreditation Commission for Traffic Accident Reconstruction) and maintains that accreditation through continuing education.

8. During the time period of his employment with WSP, Trooper Erdmann has investigated violations of homicide by intoxicated use of a motor vehicle laws and other related offenses. He has been trained to investigate vehicular homicides of various degrees, whether a bystander or occupant's death was caused by a driver's negligence, recklessness or intentional act. Such training includes the investigation of injuries or death cause by drunken or intoxicated drivers.

9. During the course of Trooper Erdmann's employment, he has participated in the

2

execution of hundreds of search warrants in the capacity of affiant and/or participant. These warrants involved the search of vehicles that were involved in a crash. Evidence searched for and recovered in these vehicles have included items showing evidence of ownership of a vehicle, identification of occupants, location of occupants within the vehicle prior to a crash, evidence of consumption of alcohol or controlled substances, and other mechanical or physical data of the vehicle as it relates to the mechanical condition of the vehicle or the impact.

### III. PURPOSE OF AFFIDAVIT

10. I submit this affidavit in support of a search warrant for the following property:

A 1992 Buick Park Avenue four-door automobile, described as white in color, VIN 1G4CU5312N1626634, registered to Marilyn R. Creapeau, which is currently located at the Shawano County Impound Facility, in the City of Shawano, in the State and Eastern District of Wisconsin. The vehicle was towed to the impound facility following a crash involving the death of Jennifer Julius, d.o.b. 11-28-91.

### IV. BASIS FOR FACTS ESTABLISHING PROBABLE CAUSE

11. Because this affidavit is submitted for the limited purpose of securing a search warrant for the property listed in paragraph 10, I have not set forth every fact known to me regarding this investigation. Rather, I have set forth those facts which I believe support a finding of probable cause. I also have set forth any exculpatory information of which I have knowledge.

12. The information contained in this affidavit is based upon my personal knowledge and investigation, my review of various documents and records, as well as information supplied to me by other Special Agents of the FBI, officers of the Menominee Tribal Police Department, and officers with the Wisconsin State Patrol, all of whom I believe to be truthful and reliable. Everything

3

Case 1:09-mj-00651   Filed 10/26/09   Page 4 of 9   Document 1

set forth in this affidavit is true to the best of my knowledge and belief.

13. As detailed below, there is probable cause to believe that located at the above-described property are items that constitutes evidence of the commission of involuntary manslaughter, including violations of 18 U.S.C. §§ 1112 and 1153.

V. **SUMMARY OF FACTS ESTABLISHING PROBABLE CAUSE**

14. On October 12, 2009, I was dispatched to the scene of fatal traffic crash located at CTH-M westbound, near Camp 18 Road, in the Menominee Indian Reservation, in the State and Eastern District of Wisconsin. Upon arrival at the scene, I met with Detective David Wynos of the Menominee Tribal Police Department (MTP). Detective Wynos indicated that a 1992 Buick Park Avenue was being operated westbound on CTH-M, when it left the roadway and struck two trees adjacent to the roadway. When the left front end of the Buick struck the trees, one of the occupants of the vehicle, Jennifer Julius, d.o.b. 11-28-91, was killed. Another occupant of the vehicle, Shanunice M. King, d.o.b. 06-10-92, was injured. The vehicle was in its final rest position when I arrived to the crash scene.

15. When Sergeant Jeremy Erdmann of the MTP responded to the scene of the accident, the third occupant of the vehicle, Willie D. Hayes, d.o.b. 10-06-91, identified himself as the driver of the vehicle at the time of the collision.

16. Officer Joshua Lawe of the MTP also responded to the scene of the accident. He made contact with Willie Hayes and could immediately smell the odor of an intoxicating beverage. Hayes stated he had been drinking and further admitted he was the driver of the vehicle. Officer Lawe transported Hayes to the hospital for a blood draw. While at the hospital, Officer Lawe placed Hayes under arrest for suspicion of OWI. A preliminary blood draw conducted revealed that Hayes

4

had a blood alcohol content of .23 at the time of his arrest.

17. Willie D. Hayes was interviewed by law enforcement. After waiving his *Miranda* rights, Hayes indicated that he had been drinking "Loko" beer on the night of the crash, which I have since learned is called "Four Loko", an alcoholic beverage with a twelve-percent alcohol content. Hayes said that after drinking numerous Loko beers, he and his girlfriend, King, picked up Julius. The three were driving around on Old South Branch Road, turning onto County M toward Neopit, Wisconsin. Hayes said he was driving the vehicle, while King was seated next to him and Julius sat next to King by the front passenger side door. Hayes indicated that the next thing he knew, he had blacked out and the car was in a ditch. He called out for King and she replied that she was hurt. Hayes exited the vehicle and flagged down a police officer. The officer called for the jaws of life and an ambulance. Hayes estimated that he was traveling between 55 and 65 miles per hour at the time of the accident. Hayes said that while he was driving he realized that he was too drunk to drive.

18. Shanunice King spoke to law enforcement officers and also indicated that Willie D. Hayes was driving the vehicle at the time of the crash. King further indicated that prior to the crash, Hayes was drinking beer within the vehicle.

19. Based on the statement from Hayes and the further statement of King, it is believed that Hayes was driving the vehicle and through his negligence is responsible for the death of Julius.

20. Since the time of his initial contact with law enforcement, Hayes has now stated that he was a passenger in the vehicle. I am aware that Officers Lawe and Erdmann reported that they believe that Hayes was the driver of the vehicle. In fact, Officer Lawe issued an OWI citation to Hayes.

21. The above-described vehicle, after the accident, was towed to the Shawano County

5

Impound Lot within the control of the Shawano County Sheriff's Department. The vehicle has remained in this enclosed, secure location, to preserve any evidence that it contains.

22. In summary, I believe that the vehicle contains evidence of a crime of involuntary manslaughter as my investigation reveals Willie D. Hayes was under the influence of an intoxicant. A search of the vehicle will likely establish whether Willie D. Hayes was, in fact, the driver of this vehicle. I know from my training and experience, that fiber, tissue, DNA or other trace evidence will remain after a vehicular accident of this sort, allowing for technicians to retrieve this evidence and reconstruct who was driving this vehicle. This evidence will assist in my investigation of this case. Further, I believe it is probable that the vehicle will contain fingerprint evidence or evidence of either Shanunice King or Willie Hayes's personal belongings or other possessions and, depending upon where located in the vehicle, will also assist in my investigation as to who was driving said vehicle.

23. I seek to have the vehicle analyzed for the physical damage and characteristics of the Buick Park Avenue for purposes of reconstructing the collision. I also seek to have the mechanical condition of the Buick Park Avenue analyzed to determine whether mechanical failure might be a causal factor in the fatal collision described above. I further seek to have blood, hair, and tissue trace evidence collected throughout the Buick Park Avenue, which may contain Deoxyribonucleic Acid (DNA) from the occupants that were seated within the vehicle at the time of the crash. I further seek to search the occupant compartment, glove compartment, and trunk for any item or items within the vehicle of evidentiary significance concerning alcohol and drug use or possession or consumption.

24. I am, therefore, requesting that a search warrant be issued to search the property, a vehicle which is described more fully in paragraph 10. In light of the information set forth in paragraph 4, I am requesting the Court's permission to seize the vehicle from the impound facility.

6

Case 1:09-mj-00651  Filed 10/26/09  Page 7 of 9  Document 1

I intend to seek out and obtain the aid of the Wisconsin State Patrol to conduct an off-site search of the vehicle for the evidence described.

7

## Attachment A – Items to be Seized

1. Blood, hair, fiber, tissue, or any other evidence or trace evidence which may contain Deoxyribonucleic Acid (DNA).

2. Fingerprint evidence.

3. Any items within the vehicle evidencing ownership, identification of any occupants, or the location of the occupants of the vehicle.

4. Any item or items within the vehicle concerning alcohol or controlled substance use, possession or consumption, including containers, packaging materials or paraphernalia for same.

5. Vehicle weight, measurements, and other physical data of the vehicle, including light bulbs, which can be analyzed to determine illumination, paint transfers, impressions, impact points to be examined, examination and analysis of gauges and other mechanical parts.

6. Evidence of the mechanical condition of the vehicle, including the condition of the vehicle's brakes, steering mechanism, suspension and other mechanical characteristics of the vehicle, bearing on whether the defendant's intoxication or the vehicle's mechanical condition caused or contributed to the fatal collision.